IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-01949-MSK-OES

SHERRY BRIANNE,

      Plaintiff,

v.

COBE CARDIOVASCULAR, INC.,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

THIS MATTER comes before the Court on the Defendant's Motion for Summary Judgment (**#11**). Having considered the motion, its supporting brief (**#12**), the response (**#18**), the reply (**#21**), and any attachments thereto, the Court finds and concludes as follows.

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

### II. Issue Presented

The Plaintiff, Ms. Brianne, asserts three enumerated claims. In Claim 1, she alleges that the Defendant, Cobe Cardiovascular, Inc. ("Cobe"), discriminated against her on the basis of sex and retaliated against her in violation of Title VII of the Civil Rights Act of 1964. In Claim 2, she alleges that Cobe discriminated against her on the basis of age and retaliated against her in violation of the Age Discrimination in Employment Act. In Claim 3, she alleges that Cobe's

1

discriminatory and retaliatory conduct constituted a breach of contract and that Cobe should be

estopped from reneging on any promises it made.  The Court must determine whether a trial is

required on any of Ms. Brianne's claims.

### III.  Material Facts

Except where otherwise noted, the Court finds that the following facts are undisputed

based upon the evidence submitted.  Such undisputed facts are deemed established for purposes

of trial.  *See* Fed. R. Civ. P. 56(d).  Where there is a factual dispute, the Court construes the

evidence most favorably to Ms. Brianne.

1.      Ms. Brianne was employed as a supervisor of custodial employees by Cobe.

2.      Ms. Brianne is a female over the age of 40.

3.      In February 2001, Ms. Brianne submitted a written complaint of discrimination to

Cobe's Human Resources department.  Also in February 2001, Ms. Brianne filed a Charge of

Discrimination with the Equal Employment Opportunity Commission ("EEOC").  In both, she

complained that her supervisor, Dan Pace, discriminated against her on the basis of her sex and

age.  She also claimed retaliation.

4.      As the result of her internal complaint, Cobe assigned Ms. Brianne a new

supervisor, Robert McClary.  Later that same year, she was assigned yet another new supervisor,

Craig Snyder.

5.      Ms. Brianne received a favorable performance review from Mr. Snyder for 2002.

6.      Ms. Brianne reported to Mr. Snyder until her employment was terminated on

November 6, 2003.

7.      Mr. Snyder was the first person to inform Ms. Brianne that her job was being

terminated.  When he told her this, he was visibly upset, cried, and said that he "couldn't protect" her and that "the decision was not in his hands."  Mr. Snyder had been happy with Ms. Brianne's work and did not believe that anybody in his chain of command knew how helpful she had been to him.

8.     Ms. Brianne then met with Robert Smith, who was Mr. Snyder's immediate supervisor, and Sharon Oliver, who worked in Human Resources.  They advised her of the termination, the severance package, and COBRA insurance.

9.     The parties dispute who actually made the decision to terminate Ms. Brianne's employment.  Construing the evidence most favorably to Ms. Brianne, such decision was made by Mr. Smith, his immediate supervisor Nick Zieman, and Mr. Zieman's immediate supervisor Bill Osgood.  The decision might have been made as early as July 2003.

10.     Ms. Brianne believes, based upon unspecified deposition transcripts, that Ms. Oliver was the person who made the decision to terminate her employment.  Cobe disputes this.  There is no evidence in the record that Ms. Oliver made such decision.  However, Mr. Zieman testified at his deposition that he discussed the decision to terminate Ms. Brianne's employment with Human Resources.   Mr. Smith testified at his deposition that the final decision to terminate Ms. Brianne's employment could not have been made without input from Human Resources.

11.     The parties dispute the actual reason for Ms. Brianne's termination.  According to Mr. Osgood, Cobe decided to terminate Ms. Brianne's employment in order to save money.  He considered her termination to be part of an "ongoing reorganization." He stated that because Cobe's sales were "flat," the company needed to find $3 million in cost savings.  He stated that spending the savings in some other area was absolutely out of the question "[b]ecause we had to

come up with about $3 million of cost savings to offset all of the cost increases of the following year[.]"

12.     Mr. Osgood's explanation for Ms. Brianne's termination is contrary to Mr. Zieman's explanation.  Mr. Zieman testified at his deposition that the money saved by terminating Ms. Brianne's employment would be spent on safety matters.

13.     From November 2002 until the time of Mr. Osgood's deposition, several employees (both male and female) left supervisory, managerial or technical positions with Cobe. Two left after accepting early retirement packages, two resigned, one retired, three left to take jobs elsewhere, two were involuntarily terminated for cause, and two left after their jobs were eliminated.

14.     At the time Ms. Brianne's employment was terminated, several employees under the age of 40 who had less seniority than Ms. Brianne were not terminated.  These included Andrew Allison, Laura Belmudez, and others.

15.     The parties dispute whether Ms. Brianne's sex had anything to do with her termination.  Ms. Brianne believes that sex had something to do with the decision to terminate her employment based upon her observations as to how "men interacted with men and that women were rarely included unless they were senior management."

16.     At no time did Ms. Brianne ever observe Mr. Smith or Ms. Oliver make comments based upon age or sex.

17.     Ms. Brianne received a letter advising her that she was "being terminated from the company effective November 6, 2003 due to a reorganization."

18.     Ms. Brianne was the only Cobe employee whose job was terminated during the

4

reorganization out of approximately 800 Cobe employees.  Cobe does not dispute that Ms.

Brianne was the only person terminated on November 6, 2003, but it contends that other

positions were eliminated through vacancy savings.

19.     Ms. Brianne received a separation and severance agreement.  It was accompanied

by a waiver and release which provides that the employee "expressly agrees that she will not apply

for reemployment with the employer."

20.     When a co-worker, Joe Garbo, alleged discrimination by Cobe in separate

litigation, Ms. Brianne provided an affidavit to support him.  She does not know whether anyone

at Cobe ever saw this affidavit and did not mention its existence to anybody at Cobe.  However,

the day after she provided her affidavit, she started to feel as though upper level managers, such

as Mr. Smith and Mr. Osgood, were avoiding her.

21.     On February 7, 2003, Ms. Brianne was deposed in connection with the Garbo

matter.  She does not recall discussing this deposition with anybody at Cobe.  However, based

upon unspecified comments she heard at work, Ms. Brianne believed that the entire workplace

knew that she had testified on Mr. Garbo's behalf and that she had made her own charge of

discrimination.  The parties dispute whether Ms. Brianne's involvement in the Garbo litigation or

her charge of discrimination was common knowledge within the company.

22.     Mr. Garbo states in his affidavit that there were "widespread comments"

demonstrating that everyone at Cobe was aware of his case and that Ms. Brianne had testified on

his behalf.  He also states that there was an efficient "rumor mill" within the company.  Cobe

disputes these facts.

23.     Mr. Smith, Mr. Zieman and Mr. Osgood denied any knowledge of Ms. Brianne's

5

assistance to Mr. Garbo in his discrimination lawsuit.  This is a disputed fact.

      24.    Ms. Brianne was listed as a witness on the July 2, 2003 witness list for Mr.

Garbo's trial.

      25.    Ms. Oliver, who worked in Human Resources, worked on Mr. Garbo's case.

      26.    Ms. Brianne believes that her complaint against Mr. Pace was common knowledge

within the company.  She states in her affidavit that Mr. Osgood informed her that he was aware

of her complaint against Mr. Pace.  These are disputed facts.

      27.    Cobe produced a document entitled "Guidelines for Managing our Human

Resources."  At the time of Ms. Brianne's termination, this document stated in relevant part:

> I.  POLICY
>> The Company is an equal employment opportunity
>> employer . . . All persons must be recruited, hired and
>> treated in all personnel actions in accordance with federal
>> law.  Subject to its affirmative action obligations, . . . it is
>> the Company's policy that employment decisions be made
>> without regard to race, color, age, religion, gender, national
>> origin, veteran status, or disabling conditions. . . .

It also provided that "[a]ny employee who believes that she/he has been discriminated against

should report the concern in a timely manner to the Human Resources Department so that the

complaint can be investigated. . . . Any employee who believes that she/he has been discriminated

against in violation of state or federal antidiscrimination laws has the right to file charges with,

and request assistance from, the local [EEOC] without fear of retaliation."  In bold, capitalized

print, the document also stated:

> **OUR POLICIES AND GUIDELINES HAVE NEVER BEEN
> INTENDED TO SUGGEST OR IMPLY THAT THEY FORM
> THE BASIS FOR A CONTRACTUAL RELATIONSHIP
> BETWEEN EMPLOYEES AND THE COMPANY.  THEY**

**REPRESENT ONLY GUIDELINES FOR OUR WORKING RELATIONSHIPS, AND DO NOT ESTABLISH ANY CONTRACTUAL RIGHTS.**[1]

It also contains disclaimers on each policy page that the stated policies are not to be construed as giving rise to an employment contract.  Such disclaimers, however, were in small, italicized print.

28.     At her deposition, Ms. Brianne stated that she could not recall seeing this disclaimer but did not know whether or not the guidelines contained it.

29.     On its bulletin boards, Cobe made promises to its employees that it would not discriminate.  The specific language of these promises is not in the documentary record.

30.     Ms. Brianne states in her affidavit that Cobe had an unwritten "open door policy" that an employee could complain to management about anything without retaliation.  The specific language of this policy is not in the documentary record.

## IV.  Standard of Review

Determination of claims or defenses on their merits without a trial is governed by Rule 56 of the Federal Rules of Civil Procedure, which facilitates the entry of a judgment if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Rule 56 authorizes summary adjudication when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law determines the material facts and issues.  It specifies the elements that must be proved for a given

---

[1] In an effort to demonstrate that this language was not part of the guidelines, Ms. Brianne has submitted an affidavit from her attorney as Exhibit 11.  In this affidavit, Mr. Olsen attempts to explain certain deposition testimony of Ms. Brianne and speculates regarding the contents of Cobe's written guidelines based upon his familiarity with the guidelines from other litigation.  Without addressing whether Mr. Olsen may properly act as a fact witness in this matter, the Court does not consider his speculations as establishing any material fact.  *See* Fed. R. Civ. P. 56(e).

claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence for a reasonable jury to find in favor of the non-movant on the claim or defense that the non-movant is obligated to prove. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## V.  Analysis

8

**A.  Discrimination**

Ms. Brianne asserts two claims of unlawful discrimination resulting in the termination of her employment.  The first is that Cobe discriminated against her on the basis of her sex; the second is based on her age.[2]

Ms. Brianne does not purport to have direct evidence of discrimination.  Therefore, both claims are subject to the *McDonnell Douglas*[3] burden shifting analysis.  To establish a *prima facie* case of discrimination on the basis of sex, Ms. Brianne must produce evidence that:

(1)    She is a member of the class protected by the statute.

(2)    She was qualified for the job she held.

(3)    Her employment was terminated.

(4)    Her termination occurred under circumstances which give rise to an inference of discrimination.

*See Plotke v. White*, 405 F.3d 1092, 1099-1101 (10th Cir. 2005).  The elements of an age discrimination claim are the same except that element 1 requires Ms. Brianne to be within the protected age group.  *See Rivera v. City and County of Denver,* 365 F.3d 912, 920 (10th Cir. 2004); *Branson v. Price River Coal Co.,* 853 F.2d 768, 771 (10th Cir. 1988).

If Ms. Brianne presents evidence of a *prima facie* case, then the burden shifts to Cobe to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *See Rivera*, 365 F.3d at 920.  If Cobe  sets forth such a reason, then the burden shifts back to Ms. Brianne to

---

[2] Cobe argues that to the extent such claims are based upon actions taken against her in 2001, this lawsuit is untimely.  Ms. Brianne agrees.  Therefore, the Court does not consider this issue.

[3]  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

produce evidence that Cobe's reason is pretextual.  *See Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995).  To demonstrate pretext, Ms. Brianne's evidence must show either that Cobe's decision was more likely motivated by discrimination or that Cobe's proffered reason is unworthy of credence.  *See id.* at 632.

Cobe seeks summary judgment on the discrimination claims on two grounds: it contends that Ms. Brianne cannot produce evidence in support of element 4 because she cannot establish that her job existed after her termination, and it contends that she cannot establish that its legitimate, non-discriminatory reason for her termination is pretextual.

With regard to the fourth element, it is not necessary for a plaintiff to show that her job extisted following her termination.  *See Plotke*, 405 F.3d at 1101.  There are a variety of ways in which an employee can show that a termination arose in circumstances giving rise to an inference of discrimination, for example by actions or remarks of a decisionmaker which reflect discriminatory animus, preferential treatment given to employees outside of the protected class, and other conduct by the employer.  *See id.*

Construing all facts most favorably to her, Ms. Brianne has met her burden of production of evidence sufficient to establish element 4 at this juncture.   Mr. Osgood contended that Cobe needed to find $3 million in cost savings and therefore terminated Ms. Brianne's employment. However, at the time it terminated Ms. Brianne's position as part of a "reorganization," it did not terminate the job of any other employee.  Other employees who left Cobe during the year or two surrounding Ms. Brianne's termination were offered incentive packages, but Ms. Brianne was not. In addition, the severance agreement required Ms. Brianne not to apply for any other jobs at Cobe, even though Cobe contends that she was not terminated for cause, she had received a

10

favorable performance review, and her immediate supervisor was happy with her work.  As the purported reason to eliminate Ms. Brianne's job was to save money for the company given flat sales, it is also odd that the company chose to spend the savings generated by such elimination.  In these circumstances, a reasonable jury could infer discrimination.

Cobe has articulated two legitimate, non-discriminatory reasons for Ms. Brianne's discharge.  It asserts that it eliminated her position in an effort to save money and in an effort to free up her supervisor's time to focus on health and safety issues.

Cobe contends that Ms. Brianne cannot establish that the decision to eliminate her job was pretextual.  Pretext is usually shown in one of three ways: (i) with evidence that the employer's stated reason for the adverse employment action was false; (ii) with evidence that the employer acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (iii) with evidence that the employer acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the employee.  *See Kendrick v. Penske Transportation Svcs. Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).   The same evidence which gives rise to an inference of discrimination also is probative of pretext.  In particular, the justification of cost savings appears to be contradicted by other expenditures. In light of evidence which a reasonable jury could conclude demonstrates pretext, a trial is required on Ms. Brianne's sex and age discrimination claims.

## B.  Retaliation

Ms. Brianne alleges that Cobe retaliated against her because she submitted written claims of discrimination to the company and to the EEOC and had provided testimony in support of another employee's claim of discrimination against Cobe.  To make a *prima facie* case of

11

retaliation, Ms. Brianne must produce evidence that:

    (1)    She engaged in a protected activity.

    (2)    Cobe terminated her employment.

    (3)    There is a causal connection between the protected activity and the adverse employment action.

*See Stover v. Martinez,* 382 F.3d 1064, 1071 (10th Cir. 2004). If Ms. Brianne presents evidence of a *prima facie* case, then the *McDonnell Douglas* burden-shifting analysis applies. *See id.*

    Cobe contends that Ms. Brianne cannot produce evidence to demonstrate a causal connection because there is no evidence that the people who decided to eliminate her position knew about her prior complaints of discrimination or testimony. However, the record contains evidence that Mr. Osgood knew about Ms. Brianne's prior complaint of discrimination and that Human Resources representatives such as Ms. Oliver knew about Ms. Brianne's involvement in the Garbo matter. In deciding to terminate Ms. Brianne's position, it also appears that Mr. Zieman consulted with Human Resources. Finally, Ms Brianne has produced Mr. Garbo's statement that it was common knowledge within the company that Ms. Brianne gave deposition testimony in the Garbo matter. Although Mr. Smith, Mr. Ziemand and Mr. Osgood claimed no knowledge of Ms. Brianne's involvement in the Garbo matter, a reasonable jury could conclude that they are not credible and that their decision to terminate Ms. Brianne's employment was based upon her assistance to Mr. Garbo.

    Cobe also contends that Ms. Brianne's termination is too remote in time from her protected activities to give rise to any inference of a causal connection. A delay between a protected activity and an adverse employment action can, in some cases, be too great to support

an inference of a causal connection by itself. *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997). However, if there is other evidence to support a causal connection, then the timing of the adverse action becomes less important. *See O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001).

Ms. Brianne testified in the Garbo matter in February 2003 and was involved in Mr. Garbo's litigation as late as July of 2003. There is also evidence that the decision to terminate Ms. Brianne may have been made in July 2003. If the Court looked only to the date of Ms. Brianne's deposition testimony, it would be too remote, by itself, to give rise to an inference of discrimination. However, such evidence does not stand alone. After being deposed, Ms. Brianne continued to be involved in the Garbo matter up until the time that the decision was made to terminate her employment. Therefore, Ms. Brianne has met her burden of production as to element 3.

As with the discrimination claims, Cobe offers the same, legitimate and non-discriminatory reasons for Ms. Brianne's termination and challenges her ability to prove pretext. For the reasons discussed *supra*, Ms. Brianne has produced sufficient evidence of pretext. Therefore a trial is required on her retaliation claim.

## C. Breach of Contract/Estoppel

In her Complaint, Ms. Brianne alleges that Cobe breached promises it made to employees not to discriminate or retaliate against them, and not to retaliate based upon an employee's use of an "open door policy." She also alleges that Cobe should be estopped from reneging on these promises.

In its Motion for Summary Judgment, Cobe treats this claim solely as a claim for breach of

13

an implied contract and ignores the promissory estoppel claim.  In her response, Ms. Brianne makes no arguments pertaining to any estoppel claim.  Therefore, with respect to the promissory estoppel claim, Cobe has made no challenge to Ms. Brianne's burden of production and the claim may proceed to trial.

To establish a *prima facie* claim for breach of an implied contract, Ms. Brianne must produce evidence that:

(1)     Cobe promulgated a policy.

(2)     In doing so, Cobe was making an offer to Ms. Brianne that it would be bound by the policy.

(3)     Ms. Brianne's initial or continued employment constituted acceptance of the offer.

*See Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir. 1994).   Cobe contends that Ms. Brianne cannot produce evidence to support element 2.

An employer makes an offer to an employee if the employer "manifest[s] his willingness to enter into a bargain in such a way as to justify the employee in understanding that [her] assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain."  *See id.* (quoting *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711-12 (Colo. 1987)).  It is usually for the jury to decide whether a written policy constitutes an offer, but such issue may be decided as a matter of law if (1) there is a conspicuous disclaimer stating that the policy is not intended to create a contract, (2) the alleged promises are nothing more than "vague assurances" which if they are too indefinite for a court to determine whether a contract has been performed, or (3) the undisputed facts otherwise show that the employer did not intend the policy to constitute an offer.  *See Orback v. Hewlett-Packard Co.*, 909 F. Supp. 804, 808 (D. Colo.

14

1995), *aff'd*, 97 F.3d 429 (10th Cir. 1996); *see also Vasey*, 29 F.3d at 1466; *Clark v. Town of Kersey*, 973 F. Supp. 1217, 1220 n.4 (D. Colo. 1997).

Here, Ms. Brianne has presented evidence of a written policy in the form of Cobe's guidelines.  However, such guidelines cannot constitute a contractual offer as a matter of law because they contain a conspicuous disclaimer that they do not establish any contractual rights.  Ms. Brianne has also presented evidence that there was an unwritten promise not to discriminate or retaliate.  However, she has not identified the specific terms of such promise.  As a consequence, she has not produced sufficient evidence for this Court to determine that there was a sufficiently definite promise which could be enforced.  Therefore, the Court dismisses the breach of implied contract claim.

**IT IS THEREFORE ORDERED** that the Defendant's Motion for Summary Judgment **(#11)** is **GRANTED IN PART** and **DENIED IN PART**.  The Court dismisses the Plaintiff's breach of implied contract claim.  A trial is required on her remaining claims of sex discrimination, age discrimination, retaliation, and promissory estoppel.  The undisputed facts are deemed established for purposes of trial pursuant to Fed. R. Civ. P. 56(d).

Dated this 15th day of February, 2006

BY THE COURT:

Marcia S. Krieger
United States District Judge